Susan ROE et al., Plaintiffs-Appellees,

v.

Nicholas NORTON et al.,
Defendants-Appellants.

No. 593, Docket 74–1874.

United States Court of Appeals,
Second Circuit.

Argued Dec. 11, 1974.

Decided July 31, 1975.

Lucy V. Katz, Bridgeport, Conn. (Kathryn Emmett and Koskoff, Koskoff, Rutkin & Bieder, Bridgeport, Conn., Catherine G. Roraback and Ann C. Hill, New Haven, Conn., and Marilyn P. Seichter, Hartford, Conn.), for plaintiffs-appellees.

Before FEINBERG and MULLIGAN, Circuit Judges, and BRYAN, District Judge.*

FREDERICK van PELT BRYAN, District Judge:

Appellants here are the Commissioner of Welfare of the State of Connecticut and two other officials of the Connecticut Welfare Department charged with the administration of the State Medical Assistance Program. They appeal from a judgment of the United States District Court for the District of Connecticut (Jon O. Newman, *J.*) which declared invalid and enjoined the enforcement of a Connecticut Welfare Department regulation on the ground that the regulation was contrary to Title XIX (the Medicaid provisions) of the Social Security Act, 42 U.S.C. § 1396 et seq.

The challenged regulation, Connecticut Welfare Department, Public Assistance Program Manual, Vol. 3, Ch. III, Section 275, required that as a pre-condition to coverage of abortion services for women in Connecticut eligible for Medicaid, the abortion must be a therapeutic one, recommended by the attending physician and the Chief of Obstetrics and Gynecology in the accredited hospital as "medically or psychiatrically necessary". Under the regulation, a prior authorization request is required which must include a "statement indicating the medical or psychiatric need for the abortion" and also a form which certifies that in the opinion of the attending physician the abortion "is medically necessary for the patient's health", signed by the physician

Edmund C. Walsh, Asst. Atty. Gen. (Robert K. Killian, Atty. Gen., State of Connecticut), for defendants-appellants.

* Frederick van Pelt Bryan, of the Southern District of New York, sitting by designation.

and attested by the Chief of Obstetrics and Gynecology.[1]

The judgment appealed from was entered in a class action brought by two indigent women eligible for Medicaid payments and recipients of Aid to Dependent Children from the State of Connecticut. The suit challenged Section 275 as both contrary to Title XIX of the Social Security Act and in violation of several provisions of the United States Constitution, including the equal protection and due process clauses of the Fourteenth Amendment.

Plaintiff Susan Roe, 26 years old and the unmarried mother of three small children, was seven weeks pregnant at the time suit was instituted. She desired an abortion to avoid further family burdens and complications. Her attending physician believed the abortion to be a medically appropriate procedure and was willing to perform it. However, in his opinion it was not medically necessary in the sense that the patient's life or health would be threatened if the abortion was not performed. Roe was therefore unable to obtain the certification required by Section 275 that the abortion was recommended "as medically or psychiatrically necessary". She was thus not entitled to reimbursement from the state for the cost of the abortion and she was unable to pay for the abortion herself. She sued on behalf of herself and a class consisting of all pregnant women eligible for medical assistance from the State of Connecticut who had been refused such assistance for the performance of a requested abortion authorized by a physician.[2]

Plaintiff Mary Poe, a 16-year-old high school student, suing by her mother and next friend, had had an elective abortion at a Bridgeport, Connecticut hospital. She did not obtain the certification required by Section 275. The Connecticut Welfare Department therefore refused to pay her hospital bill. Poe sued on behalf of herself and all women eligible for Connecticut medical assistance who had undergone abortions for which Medicaid payment had been refused by the State.

The action was brought under 42 U.S.C. § 1983 and jurisdiction was based on 28 U.S.C. § 1343(3). Judgment was sought declaring that Section 275 was invalid and enjoining its enforcement.

Plaintiffs moved before Judge Newman for a class action determination under Rule 23, F.R.Civ.P.; for the convening of a three-judge district court pursuant to 28 U.S.C. §§ 2281 and 2284; and for summary judgment.

Defendant welfare officials acknowledged that under the decisions of the

---

1. Section 275 provides, in relevant part:

 275 *Abortion Services*
 An abortion may be performed on a patient only when medically necessary and after the legal consent to such procedure has been obtained.
 Therapeutic abortion services within the State are covered under Title XIX when all the following conditions are met:
 1. The abortion is recommended as medically necessary by the attending physician and the Chief of Obstetrics and Gynecology in accredited hospitals.
 2. The written consent for the abortion is secured from the patient or her conservator, and in the case of a minor from the parent or guardian.
 3. Prior authorization for the abortion is secured from the Division of Health Services, Welfare Department.

 *Procedures*
 1. *Legal Consent*
 The hospital in which the requested abortion is to be performed will submit Form W–217, "Letter Requesting Certification for Reimbursement—Abortion", to Health Services in Central Office, certifying that the patient, conservator, parent or guardian has requested the performance of an abortion. This is signed by the attending physician and the Chief of Obstetrics and Gynecology in the hospital.
 2. *Authorization for Payment*
 In addition, Form W–601, "Request for Authorization for Professional Services", must accompany Form W–217 and should include a statement indicating the medical or psychiatric need for the abortion.

2. A temporary restraining order was obtained on consent of the parties prohibiting defendant welfare officials from refusing to pay the cost of an abortion for Roe.

Supreme Court in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); and of the three-judge court in *Abele v. Markle*, 369 F.Supp. 807 (D.Conn.1973),[3] pregnant women in Connecticut, at least in the first trimester of pregnancy, were free to have an abortion on the advice of their own physicians. However, defendants' position was that the Medicaid provisions of the Social Security Act (Title XIX) prohibited federal reimbursement for the costs of an abortion unless the abortion was medically necessary for the woman's physical or psychiatric health. They asserted that Section 275 had been adopted only because the restrictions it imposed were required by Title XIX and would not otherwise have been in force. Connecticut has consistently adhered to that position, both in the district court and on this appeal.

Judge Newman found the action was properly maintainable as a class action under Rule 23(b)(2) and that plaintiffs' claim that Section 275 violated the Constitution was substantial enough to confer jurisdiction on the district court pursuant to 28 U.S.C. § 1343(3) in an action under 42 U.S.C. § 1983. *Roe v. Norton*, 380 F.Supp. 726, 728 (D.Conn.1974). The determination of the constitutional question would ordinarily have required the convening of a three-judge district court pursuant to 28 U.S.C. §§ 2281 and 2284. However, Judge Newman found, 380 F.Supp. at 728, that plaintiffs' contention that Section 275 was contrary to Title XIX of the Social Security Act presented a statutory claim pendent to the constitutional claim which could be determined by a single judge without convening a three-judge court. *Hagans v. Lavine*, 415 U.S. 528, 543–545, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

Judge Newman therefore proceeded to pass only on the pendent statutory claim

that Section 275 was invalid as contrary to Title XIX of the Social Security Act. He analyzed the relevant provisions of Title XIX in the context of federal reimbursement for abortion services and gave weight to the views of the Department of Health, Education and Welfare (H.E.W.) that "under Title XIX, federal financial participation is available for any abortions for which the state welfare agency provides payment."[4] Finally, he expressed the view that there were substantial doubts as to the constitutionality of Title XIX in the light of *Roe v. Wade, supra* and *Doe v. Bolton, supra,* and that the statute must be construed so as to avoid such doubts. 380 F.Supp. at 730.

Judge Newman concluded (1) that Title XIX did not limit Medicaid reimbursement for abortions under a state medical assistance program to those medically necessary for the health of the patient, but permitted payment for elective abortions as well; and (2) that Title XIX prohibited state regulations that "impair a woman's exercise of her right, in consultation only with her physician, to have an abortion," whether medically necessary or elective. He therefore held that Section 275 was invalid as contrary to Title XIX and that its enforcement should be enjoined, and entered judgment to that effect. 380 F.Supp. at 730.

Three different points of view concerning the meaning and effect of Title XIX as to coverage for abortion services are presented on this appeal.

In an *amicus curiae* memorandum submitted at the request of this Court subsequent to argument, H.E.W. elaborates on the views expressed on its behalf in the court below. H.E.W. takes the position (1) that Title XIX does not *preclude* a state Medicaid program from paying for abortions which are not "medically necessary"; but (2) that Title XIX does

---

3. *Abele v. Markle, supra,* held unconstitutional a Connecticut statute prohibiting all abortions except those "necessary to preserve the physical life of the mother".

4. These views were contained in a letter to plaintiff's counsel from the Associate Commissioner of H.E.W.'s Social and Rehabilitation Service, which was presented to the district court.

not *require* a state to make Medicaid payments for abortions which are not "medically necessary." In effect, H.E.W. disagrees with the holding of the court below that Title XIX *prohibits* state regulations denying Medicaid payments for abortions which are not "medically necessary."

The Connecticut appellants, on the other hand, contend that Title XIX not only does not *require* a state to include under its Medicaid plan coverage of an abortion which is not "medically necessary," but *prohibits* coverage of such an abortion. They insist, as they did below, that the Section 275 restrictions on coverage of abortions are mandated by Title XIX. They therefore seek reversal of the judgment below in all respects.

The appellee-plaintiffs, in turn, take the position that Title XIX both permits state Medicaid payments for elective abortions and prohibits regulations which deny payments for elective abortions. They urge that the district court was correct in holding that Section 275 was invalid as contrary to Title XIX and that the judgment below should be affirmed in all respects.

At the outset, clarification of the meaning and effect of Section 275 is in order. Despite the apparent reluctance of the Connecticut appellants to say so, it is clear from a reading of Section 275 that abortions which are deemed "medically necessary" under the regulation are therapeutic abortions, necessary for the health of the patient, as distinguished from elective abortions requested by a woman after consultation with her physician merely because, for whatever reasons, she does not wish to bear the child. Thus, the question as to whether Section 275 is contrary to Title XIX is not, as appellants seem to suggest, whether a physician's certificate approving the abortion may be required before reimbursement is made for abortion service. The questions here are (1) whether Title XIX permits state Medicaid payments for elective abortions or, as Connecticut urges, requires a state to limit abortion coverage to non-elective abortions as

provided in Section 275; and (2) whether Title XIX prohibits a state from limiting Medicaid payments for abortions to those therapeutic abortions specified in Section 275 and from denying payments for elective abortions.

## I.

■ We have little difficulty in agreeing with the holding of the court below and the first position of H.E.W. that Title XIX permits state Medicaid coverage for nontherapeutic, elective abortions. We find nothing in the statute which precludes or limits such coverage.

The Medicaid program established by Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., provides a comprehensive scheme of federal financial assistance to enable states electing to participate to furnish medical assistance to indigent families with dependent children and aged, blind and disabled persons. The program is administered by the participating states and jointly funded by federal grants-in-aid and participating states.

In order to qualify for federal funding, a state medical assistance program must meet the requirements of 42 U.S.C. § 1396a. These requirements relate principally to the standards, quality and scope of medical, institutional, nursing and other services provided. For the four basic classes of eligible indigents a state must, at a minimum, provide the following five categories of services: (1) in-patient hospital services; (2) out-patient hospital services; (3) other laboratory and x-ray services; (4) skilled nursing facility services; early and periodic screening; diagnosis and treatment of children; family planning services and supplies; and (5) physicians' services. 42 U.S.C. §§ 1396a(a)(13)(B), 1396d(a)(1)–(5). As to these five categories of services, all that is required is that the state plan include "reasonable standards * * for determining eligibility for and the extent of medical assistance * * * consistent with the objectives of [Chapter XIX]." 42 U.S.C. § 1396a(a)(17). Medical assistance must be provided

"with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8).

■ Beyond the minimal requirements for qualification, the states have wide latitude to determine the scope of coverage and to institute wide-ranging and comprehensive medical programs under their medical assistance plans. Section 1396d(a) defines the term "medical assistance" to mean payment for 17 different authorized types of care and services. In addition to the five types required for qualification (subsections 1–5), among the 12 other authorized types within that definition are: (6) "medical care, or any other type of remedial care recognized under State law, furnished by licensed practitioners within the scope of their practice as defined by State law"; (13) "other diagnostic, screening, preventive, and rehabilitative services"; and (17) "any other medical care, and any other type of remedial care recognized under State law, specified by the Secretary". As H.E.W. points out, " * * * the programs are characterized by a high degree of diversity from state to state, reflecting each state's own determination of its medical and social priorities."

Nowhere in this long and complicated statute do we find any limitation on Medicaid payments for abortions. Indeed, the statute is devoid of any reference at all to abortions or abortion services. In our view, payments for all abortion services, whether the abortion be therapeutic or elective, are well within the definition of medical assistance which the states are authorized to furnish, as spelled out in Section 1396d(a).

The contention of the Connecticut appellants, that Title XIX forbids Medicaid payments for elective abortions, is based on two premises. The first is that under Title XIX Medicaid payments are authorized only for services which are "medically necessary" and for no others. The second is that under Title XIX abortion services are "medically necessary" only when the abortion is therapeutic and not when it is elective.

■ To support their first premise, appellants rely on the use of the phrase "medically necessary services" in two places in the statute. In each place the phrase is used to describe persons eligible for "medical assistance" as those who are "unable to meet the costs of necessary medical * * * services." Sections 1396 and 1396a(10)(C)(i). As the opinion below points out, 380 F.Supp. at 728–729, the phrase appears in Title XIX

"only as a limitation on *persons* eligible for Medicaid payments. * * * [T]he assistance to be made available to those who are eligible is always described simply as 'medical assistance' without the adjective 'necessary'. See, e. g., 42 U.S.C. §§ 1396, 1396a(a), 1396a(a)(10). In particular, the detailed statutory definition of 'medical assistance,' 42 U.S.C. § 1396d, contains no reference to medical necessity * * *."

The broad classifications of the types of care and services authorized by § 1396d do not include a "medical necessity" requirement. See p. 933, *supra.* We find no such requirement elsewhere in the statute.[5]

---

5. Our brother Mulligan's concurring and dissenting opinion indicates that the legislative history of Public Law 89–97 (entitled Social Security Amendments, 1965) and particularly the report of the Senate Committee supports the view that the so-called medical necessity requirements of Title XVIII, the Medicare statute, apply to Title XIX, the Medicaid statute, which is involved here. We express no opinion on whether such a "medical necessity" requirement exists for Title XVIII. But assuming that it does, the argument overlooks the fact that Title XVIII and Title XIX are discussed and treated separately in the Senate

Report which points out significant differences between the two. Thus, while the Senate Report states that Title XVIII "would require that payment could be made only if a physician certifies to the medical necessity of the services furnished", 1 U.S.C.Cong. and Admin. News (1965), at 1986, as to Title XIX the Report states, in contrast, that with the exception of certain required coverages "coverage of other items of medical service would be optional with the States." *Id.*, at 1951. Furthermore, the Senate Report points out that "[a]mong the items of medical services which the States may include is medical care, or any

Appellants' second premise is also faulty. Even if the statute limited Medicaid payments to medical services which are "necessary", there is nothing in Title XIX, expressed or implied, from which it can be concluded that elective abortion services are to be considered not "medically necessary". Nor has anything come to our attention, by way of legislative history or otherwise, which would indicate that Congress intended such a result.

■ Pregnancy is plainly a physical condition which requires medical attention. The nature of the services to be rendered is a matter between patient and doctor. If the woman carries the pregnancy to term, such services will normally include prenatal care, obstetrical services and post partum care. If, on the other hand, the woman elects to terminate her pregnancy by having an abortion permitted by law (in the first trimester, or otherwise), the medical services required are those in performing the abortion and in appropriate care thereafter. The care and services rendered in either of these circumstances would be equally "necessary" if such a showing were required by Title XIX.

Whether or not a showing of "necessity" is required, Title XIX clearly does not bar state Medicaid payments for elective abortions or federal grants-in-aid to a state for such purposes.[6] Medicaid payments for elective abortions are, at the least, permissible under the federal statute.[7] We so hold.

It will be recalled that the Connecticut appellants have taken the position throughout this litigation that the restrictions on Medicaid payments for elective abortions in Section 275 of the Connecticut regulations were adopted only for the reason that they were thought to be required by Title XIX and would not otherwise be in effect. Our holding that Title XIX imposes no such requirement eliminates what Connecticut thought to be the necessity for adopting Section 275 and opens the door for Connecticut to rescind the restrictions which Section 275 imposes. Presumably, Connecticut took its position in good faith and thus rescission of Section 275 might be expected. In such event, the holding thus far made would be dispositive of this litigation.

However, the Connecticut appellants also contend on this appeal that even if

---

other type of remedial care recognized under State law, furnished by licensed practitioners within the scope of their practice, as defined by State law." *Id.*, at 2021. This is quite understandable in view of the fact that Title XVIII (Medicare) is a federally administered program, whereas Title XIX (Medicaid) is administered by the states, which are given wide latitude as to the coverage they elect to furnish.

The concurrence and dissent also suggests that our holding that Title XIX does not prescribe what our brother characterizes as the medical necessity test of Title XVIII would compel Medicaid assistance for such services as "cosmetic surgery, e. g., to uplift the face, inflate the breasts, or remodel the nose." Our holding does not compel Medicaid assistance for any particular medical service. Coverage which is not required by the statute is optional with the states.

It may be noted that, as the Senate Report points out, under Title XVIII expenses for cosmetic surgery would not be covered "except where incurred in connection with the prompt repair of an accidental injury or to improve

the functioning of a malformed body member." *Id.*, at 1990. There is no specific limitation on such coverage in Title XIX, presumably because coverage is optional with the states.

**6.** *See also* the discussion of Title XIX in *Doe v. Wohlgemuth*, 376 F.Supp. 173, 182–185 (W.D. Pa.1974) (three-judge court), *vacated and remanded on other grounds*, Nos. 74–1726, 74–1727 (3d Cir. Dec. 10, 1974), *rehearing en banc pending*, and the statement in *Doe v. Rose*, 499 F.2d 1112, 1114, (10th Cir. 1974), concerning the lack of "specific guidance as to whether Congress intended that abortions be covered by Medicaid and, if so, more critically, *which* abortions were to be covered by Medicaid benefits."

**7.** This accords with the views of H.E.W., the agency charged with administering the statute, which are entitled to considerable weight. *See*, e. g., *Saxbe v. Bustos*, 419 U.S. 65, 74, 95 S.Ct. 272, 42 L.Ed.2d 231 (1974); *Investment Company Institute v. Camp*, 401 U.S. 617, 626–627, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971); *Lewis v. Martin*, 397 U.S. 552, 559, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *Red Lion Broadcasting Co., Inc. v. F.C.C.*, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969).

Title XIX does not require a state to impose the restrictions on reimbursement for abortion services imposed by Section 275, the statute nevertheless permits a state, at its option, to impose such restrictions, and urges reversal of the judgment below insofar as it holds to the contrary. H.E.W. is of the same view. We therefore proceed to a discussion of that issue.

## II.

■ We disagree with the court below insofar as it held that Title XIX prohibits state regulations such as Section 275 which deny Medicaid coverage for elective abortions. In our view, while Title XIX *permits* federal reimbursement for elective abortions, it does not *forbid* state regulations limiting Medicaid payments for abortions to those which are therapeutically necessary for the health of the pregnant woman. This construction of the statute is in accord with the view expressed by H.E.W. on this appeal.[8]

When Congress enacted Title XIX in 1965,[9] abortions which are not therapeutically necessary, either for the life or health of the pregnant woman, were unlawful in most states. As late as 1973, 31 states had statutes on the books forbidding the performance of elective abortions. *Roe v. Wade, supra*, 410 U.S. at 118, n. 2, 93 S.Ct. 705. It was not until some eight years after the passage of Title XIX that *Roe v. Wade, supra* and *Doe v. Bolton, supra*, held that such state legislation, at least in the first trimester of pregnancy, was unconstitutional. During those eight years the abortion question in its various aspects was highly controversial.

The court below did not point to any provision of Title XIX which prohibits state regulations denying Medicaid coverage for elective abortions. There is certainly no mention of abortion or abor-

tion services in Title XIX. A thorough combing of the statute does not lead us to any language which directly or inferentially can be construed as prohibiting state regulations such as Section 275.

Moreover, no intention to prohibit state regulations of that nature can be ascribed to Congress. There is no legislative history to support the view that by enacting Title XIX Congress intended to prohibit states from denying Medicaid coverage for elective abortions.

■ A statute must be construed with reference to the circumstances existing at the time of its passage and in the light of the conditions under which Congress acted at the time. *Moor v. County of Alameda*, 411 U.S. 693, 709, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *United States v. Wise*, 370 U.S. 405, 411, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962); *United States v. Rothberg*, 480 F.2d 534, 535 (2d Cir.), *cert. denied*, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973); *Ries v. Lynskey*, 452 F.2d 172, 175 (7th Cir. 1971). *Cf. Department of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Hamar Theatres, Inc. v. Cryan*, 365 F.Supp. 1312 (D.N.J. 1973) (three-judge court), *vacated and remanded for consideration of mootness*, 419 U.S. 1085, 95 S.Ct. 670, 42 L.Ed.2d 675 (1974). In the light of the circumstances and conditions at the time the statute was enacted, the absence of any language in the statute regarding the subject, and the lack of legislative history indicating a contrary position, it cannot be supposed that Congress, in 1965, intended to or did impose a requirement that states must provide coverage for elective abortions when the criminal statutes of the majority of the states forbade the performance of such abortions.

The construction given to the statute by the court below rests solely on the premise that Title XIX "must be" so construed "to avoid doubts as to [its]

---

8. While the view of H.E.W. that Title XIX permitted state Medicaid payments for nontherapeutic, elective abortions was before the court below, its view that Title XIX did not forbid state regulations denying such payments was not presented there.

9. Public Law 89–97; 79 Statutes 343 *et seq.*

constitutionality" since to construe it otherwise "would raise substantial constitutional questions in light of the Supreme Court's decisions in *Roe v. Wade, supra*, and *Doe v. Bolton, supra*." 380 F.Supp. at 730. The construction of the statute based on this reasoning allowed the court below to decide the case on the purely statutory ground that Section 275 was invalid as contrary to Title XIX, a question that could be determined by a single district judge. It avoided the requirement of convening a three-judge district court pursuant to 28 U.S.C. § 2281 to hear and determine the question of the constitutionality of Section 275.

We disagree with the reasoning on which the court below based its construction of the statute. As has been indicated, *Roe v. Wade, supra* and *Doe v. Bolton, supra*, were decided some eight years after Title XIX was enacted. Their holdings were, at the least, unpredictable at the time the statute was enacted and for some time thereafter. We think that this statute should not be construed to include a requirement which is not contained in its language and which Congress did not intend it to contain, merely on the ground that doubts as to its constitutionality have been raised by cases decided after its enactment.

Moreover, here the plaintiffs' challenge is not to the constitutionality of Title XIX in the abortion context, but to the constitutionality of Section 275 of the Connecticut regulations.[10] This is the basic constitutional question involved, the answer to which will dispose of the litigation.

The cases in which restrictive state Medicaid abortion policies have been challenged on both statutory and constitutional grounds are in accord with our view that Title XIX does not forbid state regulations denying Medicaid payments for elective abortions.

In *Roe v. Ferguson*, 515 F.2d 279 (6th Cir. 1975), the Court of Appeals for the Sixth Circuit in a well-reasoned opinion recently reached the same conclusion with respect to the construction of Title XIX as we have reached here.[11] An Ohio statute and administrative rulings thereunder prohibited state Medicaid payments for abortions unless the abortion was necessary to preserve the physical and mental health of the pregnant woman. An action was brought by pregnant indigent women challenging the Ohio statute and rulings as being both contrary to Title XIX of the Social Security Act and in violation of the due process and equal protection clauses of the Fourteenth Amendment. The district court construed Title XIX as prohibiting states participating in the Medicaid program from denying payments for elective abortions and entered judgment enjoining enforcement of the Ohio statute and rulings solely on that ground. The single district judge thus avoided the constitutional questions raised by the plaintiffs and the necessity for convening a three-judge district court to hear and determine such questions.

The Sixth Circuit reversed, holding, among other things, that the construction given to the Medicaid statute by the court below was wrong and that Title XIX itself did not require states participating in the Medicaid program to pay for elective abortions.[12]

In *Doe v. Wohlgemuth*, 376 F.Supp. 173 (W.D.Pa.1970) (three-judge court),

---

**10.** Accordingly, we express no view on the constitutionality of Title XIX as here construed.

**11.** In *Roe v. Ferguson, supra*, unlike the case at bar, the defendant admitted that Title XIX *permitted* reimbursement of state payments for nontherapeutic abortions and merely argued that Title XIX did not *require* state payments for such abortions.

**12.** In so construing the statute, the *Roe v. Ferguson* opinion, 515 F.2d at 283 points out that: When Congress passed the Family Planning Services and Population Research Act of 1970, 42 U.S.C. §§ 300a et seq., providing funds to states opting to participate in creating comprehensive programs of family planning services, abortion was specifically excluded as a means of family planning to be

*vacated and remanded on other grounds,* Nos. 74–1726, 74–1727 (3d Cir. Dec. 10, 1974), *rehearing en banc pending,* a state statute, and in *Doe v. Rose,* 499 F.2d 1112 (10th Cir. 1974), a state policy, which, in effect, excluded Medicaid coverage for elective abortions, were challenged on both statutory and constitutional grounds. In each case, the court refused to find that the state policy was in conflict with Title XIX and proceeded to decide the cases on constitutional grounds. Both of these cases are thoroughly discussed in *Roe v. Ferguson, supra,* at 282–283, and there is no need to repeat that discussion here.[13]

In *Klein v. Nassau County Medical Center,* 347 F.Supp. 496 (E.D.N.Y.1972) (three-judge court), *vacated and remanded in light of Roe v. Wade and Doe v. Bolton,* 412 U.S. 925, 93 S.Ct. 2747, 37 L.Ed.2d 151 (1973), the first of the cases in which restrictive state abortion policies were challenged on statutory and constitutional grounds, the three-judge district court refused to decide the case on the statutory ground and held the state policy invalid on constitutional grounds. *See also Doe v. Westby,* 383 F.Supp. 1143 (D.S.D.1974) (three-judge court), *vacated and remanded in light of Hagans v. Lavine,* 415 U.S. 528, 543–545, 94 S.Ct. 1372, 1382–1383, 39 L.Ed.2d 577 (1974); 420 U.S. 968, 95 S.Ct. 1385, 43 L.Ed.2d 648 (1975).

We hold that Title XIX of the Social Security Act does not prohibit state regulations denying Medicaid coverage for elective abortions, and that Section 275 of the Connecticut regulations is not invalid as in conflict with Title XIX. We reverse the holding of the court below to the contrary.[14]

## III.

In holding that Section 275 is not invalid as contrary to Title XIX of the Social Security Act, we do so only upon statutory grounds. We do not reach or attempt to pass on the questions raised by the appellee-plaintiffs as to the constitutionality of Section 275. Those questions remain open.

The appellee-plaintiffs have urged that if we reverse on the statutory grounds, this court should not remand the case to the district court for further proceedings but should determine the constitutional questions presented. We decline to do so.

 The question of whether or not Section 275 is unconstitutional has quite properly been held by the district court to be "plainly substantial enough" to invoke the jurisdiction of the federal court. 380 F.Supp. at 728. The unconstitutionality of Section 275 is not, as the appellee-plaintiffs urge, so obvious and patent

recognized under the Act. 42 U.S.C. § 300a–6.

In establishing the Legal Services Corporation system, Congress again provided that no funds of the Corporation could be used for legal assistance for those seeking to procure a nontherapeutic abortion. 42 U.S.C. § 2996f(b)(8).

**13.** In *Doe v. Rose, supra,* a three-judge court was not convened on the theory that the challenged state policy was informal and not mandated by statute, and that therefore a three-judge court was not required in the light of *Philipps v. United States,* 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941).

**14.** It will be seen that taken together, parts I and II of this opinion hold, in effect, that the extent of medical benefits coverage under Title XIX is to some extent optional with the states, and thus that H.E.W. can properly reimburse states for varying extents of coverage. In *Wisdom v. Norton,* 507 F.2d 750, 756 (2d Cir.

1974), *petition for rehearing pending,* this court held that under Title IV of the Social Security Act, Aid to Families with Dependent Children (A.F.D.C.), H.E.W. is not permitted to give states the option of deciding whether to provide aid for unborn children. We held that the coverage provisions of the Act were mandatory. The Supreme Court has expressly left *the same question open. Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 1187, 43 L.Ed.2d 469 (1975). These cases are distinguishable here because they involved the *persons* covered under the Social Security Act, not the *services.* Equally important, they involved interpretation of the A.F.D.C. statutes, not the Title XIX medicaid provisions. It makes sense that states should be given wide discretion in deciding how broad a medical benefits program they wish to provide, but that there should be strict limitations on determinations by H.E.W. and the states as to who is eligible for A.F. D.C. benefits.

as to make any claim to the contrary wholly insubstantial or no longer open to discussion. *See Hagans v. Lavine, supra,* 415 U.S. at 536–538, 94 S.Ct. 1372, 39 L.Ed.2d 577, and cases there cited. Nor are the decisions of the Supreme Court in *Roe v. Wade, supra,* and *Doe v. Bolton, supra,* so controlling as to make frivolous any claim that Section 275 is not constitutional. *See Bailey v. Patterson,* 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed. 512 (1962); *Maggett v. Norton,* 519 F.2d 599, 601 (2d Cir. 1975). In *Roe v. Wade, supra,* and *Doe v. Bolton, supra,* the Supreme Court invalidated state *criminal* statutes prohibiting nontherapeutic abortions, at least in the first trimester of pregnancy, on constitutional grounds. The question of the right of a state to restrict payments for abortions under social welfare programs such as Medicaid was not before the Supreme Court in those cases and has not been passed on by the Court. Despite lower court decisions holding such restrictions unconstitutional, it cannot be said that this issue has been put to rest by the Supreme Court.

We agree with the Sixth Circuit in *Roe v. Ferguson, supra,* that the question of whether state restrictions of Medicaid payments for elective abortions are constitutionally impermissible comes within the three-judge court requirement of 28 U.S.C. § 2281 and should properly be determined by such a court, as Congress has directed.[15]

We emphasize again, however, that we express no views whatever on the merits of the constitutional issues raised here.

Plaintiffs cite *Wisdom v. Norton,* 507 F.2d 750 (2d Cir. 1974), *petition for rehearing pending; Seergy v. Kings County Republican Committee,* 459 F.2d 308 (2d Cir. 1972); and *Astro Cinema Corp., Inc. v. Mackell,* 422 F.2d 293 (2d Cir. 1970), as authority for this court to decide the constitutional question rather than remand to the district court. In

these cases the Court of Appeals passed on questions determined by a single district judge where a request had been made to convene a three-judge district court pursuant to 28 U.S.C. § 2281 to hear and determine constitutional questions. Each of these cases was quite different from the case at bar.

In *Wisdom,* the result before a three-judge district court was "foreordained" by the determination of the statutory issues by the Court of Appeals. 507 F.2d at 758. In *Seergy,* the Court of Appeals refused to remand for purposes of convening a three-judge court because plaintiffs had abandoned their prayer for injunctive relief and thus a three-judge district court pursuant to 28 U.S.C. § 2281 was no longer required. 459 F.2d at 312.

In *Astro Cinema,* the Court refused to reverse a denial by the district court of an application to convene a three-judge court pursuant to Section 2281 because in view of the holding of the Court of Appeals as to the other questions before it "to do so would be futile". 422 F.2d at 298.

These cases are not apposite to the case at bar. Our holding on the statutory issues presented has no effect on the constitutional issue, which stands on its own feet. An injunction is sought restraining the enforcement of a regulation of the State of Connecticut on the ground of unconstitutionality which must be "heard and determined by a district court of three judges" pursuant to 28 U.S.C. § 2281. Remand is not only appropriate but required. *See Hagans v. Lavine, supra,* 415 U.S. at 543–545, 94 S.Ct. 1372, 39 L.Ed.2d 577; *Maggett v. Norton, supra,* 519 F.2d at 602.

There is an additional compelling reason for remand to the district court in this case.

■ As we have pointed out, *supra* 931, 934 the position of the Con-

---

15. Like the Sixth Circuit, we disagree with the ruling of the Eighth Circuit in *Wulff v. Singleton,* 508 F.2d 1211 (8th Cir. 1974), *cert. granted,* 422 U.S. 1041, 95 S.Ct. 2655 (1975), that

state restrictions of this kind are so obviously and patently unconstitutional as to obviate the need for a three-judge court.

necticut appellants throughout this litigation has been that Section 275 was adopted and kept in force only because of the belief that it was required by Title XIX, and that the Section would not be enforced otherwise. Since we have decided that Title XIX contains no such requirement, Connecticut's reason for having Section 275 in force no longer exists and, to be consistent, Connecticut should eliminate Section 275 and its restrictions. Connecticut will have the opportunity to do so before the district court on remand and thus there may be no need to pass on the constitutional questions raised by the appellee-plaintiffs.

We reverse the judgment appealed from and remand to the district court for further proceedings consistent with this opinion.

MULLIGAN, Circuit Judge (concurring in part and dissenting in part):

I concur in the result reached by the majority of the court that the judgment appealed from was erroneous and must be reversed and the matter be remanded for the convening of a three-judge court to determine the constitutionality of Section 275 of the Connecticut Welfare Department's Regulations. I agree that there is nothing in Title XIX of the Social Security Act which requires a state to make Medicaid payments for elective abortions. My dissent here is prompted by my belief that Title XIX also *precludes* such payments so that Connecticut has not simply the option but the obligation to refuse Medicaid benefits for non-therapeutic abortions.

As the majority opinion emphasizes, when Title XIX was enacted elective abortions were illegal in a majority of the states. I therefore find it difficult to conclude that the Congress intended to provide public moneys to compensate those who engaged in what was then considered to be unlawful activity. In fact, I would think the presumption

would be otherwise. The court below interpreted Title XIX to permit and in fact require payment for abortion on demand because to do otherwise in the opinion of the court would create constitutional issues. The majority here, while eschewing the constitutional question, has nonetheless adopted in part the strained interpretation of the court below.

There are two issues raised by the majority, both of which are decided erroneously in my view. The first question is whether or not Medicaid benefits are properly payable only for those medical services which are necessary. Phrased starkly but fairly, does Title XIX authorize public moneys for unnecessary medical services? The majority answers the question in the affirmative which I frankly find to be a startling proposition. I would assume without even examining the statute that the Congress had no such intention. In fact, 42 U.S.C. § 1396 of Title XIX states that its purpose is to furnish "medical assistance" for those whose income and resources are insufficient to meet the costs of "necessary medical services." This would seem to be a clear expression of congressional intent. The majority here has embraced the argument that this section only defines the people who are eligible for medical assistance i. e., those who cannot afford "necessary medical services." Once eligible they then are permitted to receive Medicaid payments for all medical services whether necessary or not, according to the majority view. This, I submit, does not comport with either the language or spirit of the legislation. Medical assistance is referred to without limitation in other parts of Title XIX, as the majority points out, but the first use of the term in § 1396 would indicate to me that it means necessary medical services. The whole tenor of Title XIX indicates the intent to place some limit on medical assistance.[1] The Congress was

1. In addition to 42 U.S.C. § 1396, discussed above, see id. § 1396a(a)(10)(C)(i) (state plans under Medicaid must provide "for making medical assistance available to all individuals

. . . who have insufficient . . . income and resources to meet the costs of necessary medical and remedial care and services . . . ."); § 1396a(a)(17) (such state plans

obviously aware of the possibility of abuse were Medicaid payments made available for unnecessary medical services. There has been such abuse which the press is now reporting[2] and which can only be exacerbated if the majority view is accepted. We are not dealing here with the concept of medical assistance *in vacuo* but rather whether or not the plaintiff class is eligible for Medicaid. The plain language of § 1396 would indicate that only those whose resources are insufficient for necessary medical services are so entitled to the benefits of the taxpayers' money. Suppose an indigent desires cosmetic surgery, e. g., to uplift the face, inflate the breasts, or remodel the nose. Medical indigency alone under the majority view would compel Medicaid assistance for such services. If this was the intent of Congress, it is the most unusual event since the bilocation of Saint Jerome.

At the same time and as part of the same bill, Public Law 89–97, entitled "Social Security Amendments of 1965," the Congress adopted Title XVIII, Medicare, a program of health insurance for the aged. As the court below noted, the legislative history supports the state's position that a common interpretation is to be given both titles.[3] The Congress was explicit in the Medicare provision in denying benefits "which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."[4] It would indeed be anomalous and highly unlikely that Congress intended to provide broader benefits to the indigent than to those who were purchasing Medicare protection.

This leads to the second and more prickly question—is a non-therapeutic abortion medically necessary? As I read the majority opinion, the court reasons that since a woman has the constitutional right to elect an abortion and since the abortion requires medical assistance, it is therefore medically necessary under Title XIX. I agree, of course, that an abortion requires the service of a physician but to argue that the abortion is therefore necessary, it seems to me, is a non sequitur. A woman may have a variety of reasons to terminate a pregnancy. They may be social or economic, selfish or altruistic, but they are only properly termed medical if her physician can attest that her pregnancy endangers her physical or mental health. If the test is that the service sought requires a physician, then the patient who seeks purely cosmetic surgery, which I would also assume is a constitutional right, could equally urge that Medicaid benefits are payable. Although the physician is the key factor under the statute,[5] the majority eliminates his role since he has here refused to certify that the abortions are medically required.

---

must "include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan . . . ."); § 1396a(a)(30) (such state plans should "safeguard against unnecessary utilization of . . . care and services . . . ."); and § 1396b(g)(1) & (A) (to avoid certain decreases in federal aid for inpatient care, states must make a showing that they have in operation "an effective program of control over utilization of . . . services;" these programs must include, *inter alia*, a certification by a physician "that such services are or were required to be given on an inpatient basis because the individual needs or needed such services . . . .").

**2.** See, e. g., N.Y. Times, July 18, 1975, at 35, cols. 7–8 (concerning the payment of padded Medicaid bills).

**3.** 380 F.Supp. at 729, citing 1 U.S.C.Cong. & Admin.News (1965), at 1943, 1986, and 1989 (e. g., the "overall purpose" of the bill is "to provide a coordinated approach for health insurance and medical care for the aged under the Social Security Act by establishing three new health care programs: [(1) and (2), programs for the aged, and] (3) an expanded medical assistance program for the needy and medically needy aged, blind, disabled, and families with dependent children." (1) and (2) constitute Title XVIII, and (3) is Title XIX).

**4.** 42 U.S.C. § 1395y(a)(1).

**5.** See note 3 *supra*.

I do not believe that we can equate abortion and child bearing as two comparable solutions to pregnancy under Title XIX. The pregnancy of the mother, absent miscarriage, inevitably and biologically terminates in the birth of the child, a process which today at least requires medical attention and assistance. Abortion, on the other hand, requires medical service only because the mother has made a voluntary decision which may or may not be dictated by medical necessity. If the motivation is not medical, I do not see how it becomes medically necessary under the statute. As the majority has pointed out, non-therapeutic abortions were generally illegal in 1965 and it would be indeed strange to imagine that Congress in enacting Title XIX intended that they be considered medically necessary. If any abortion at all is deemed medically necessary, then the distinction between non-therapeutic and therapeutic abortions must have been obliterated by the Congress in 1965 in the passage of Title XIX but we find nothing at all in the legislative history of the statute to support this proposition. As the majority indicates, the word abortion never appears in Title XIX and its absence, I think, is further evidence that Congress did not intend that drastic change which the majority finds.

I also believe that the determination as to whether Section 275 of the pertinent regulation should now be rescinded is a decision to be made by the appropriate agency and officials of the State of Connecticut. Even if the majority is correct in its view that Connecticut only has the option to make these payments and was in error in believing that its regulation was mandated by the Social Security Act, the regulation is appropriate. Abortions are still more controversial than appendectomies and the policy of the State of Connecticut with respect to the expenditure of public moneys should be determined by the state and not by a federal court.