Susan ROE, Individually and on behalf of all others similarly situated, et al.

v.

Nicholas NORTON, Individually and as Commissioner of Welfare for the State of Connecticut, et al.

Civ. No. N–74–17.

United States District Court, D. Connecticut.

Dec. 31, 1975.

Lucy Katz, Kathryn Emmett, Bridgeport, Conn., Ann Hill, New Haven, Conn., for plaintiffs.

Edmund C. Walsh, Asst. Atty. Gen., Hartford, Conn., for defendants.

Before TIMBERS, Circuit Judge, and ZAMPANO and NEWMAN, District Judges.

1. Section 275 provides in relevant part:

Therapeutic abortion services within the State are covered under Title XIX when all the following conditions are met:
1. The abortion is recommended as medically necessary by the attending physician in accredited hospital or licensed clinic. . . .

2. The written consent for the abortion is secured from the patient. . . .

## MEMORANDUM OF DECISION

NEWMAN, District Judge:

This is a motion for summary judgment by the plaintiffs in a lawsuit challenging the constitutionality of the Connecticut Department of Welfare's refusal to reimburse welfare recipients for the expense of an abortion, absent a prior showing that the abortion is necessary to preserve the physical or psychiatric health of the woman. The state originally defended its policy on the ground that Title XIX (Medicaid) of the Federal Social Security Act, 42 U.S.C. § 1396 *et seq.*, prohibited payment for elective abortions. A one-judge District Court rejected that contention, construing Title XIX neither to prohibit such payments nor to permit a state to refuse to make them, 380 F.Supp. 726 (D.Conn.1974). On appeal, the Second Circuit, 522 F.2d 928 (2d Cir. 1975), held that the Social Security Act was entirely neutral as to abortion payments, neither requiring the states to pay for any abortion services at all, nor forbidding the states from reimbursing welfare recipients for the expense of an elective abortion. The case was remanded for consideration of the constitutional issues by this three-judge court, in the event the state chose to continue its policy once the mistaken reliance on Title XIX was removed. The state has elected to keep its policy in force.

Connecticut Welfare Department, Public Assistance Program Manual, Vol. 3, Ch. III, § 275 requires, prior to the performance of a first-trimester abortion for which welfare assistance is sought, that a certificate be submitted from the attending physician that the abortion is "recommended as medically or psychiatrically necessary."[1] The plaintiffs and the class they represent,[2] claim that this

3. Prior authorization for the abortion is secured from the Chief of Medical Services, Division of Health Services, Department of Social Services.

2. The District Court certified the lawsuit as a class action under Fed.R.Civ.P. 23(b)(2). 380 F.Supp. at 730.

regulation is invalid because it denies them equal protection of the law.

Every plaintiff in this lawsuit is a potential medicaid recipient whose pregnancy was terminated during the first trimester of pregnancy and who elected to undergo an abortion for reasons unrelated to preservation of the mother's health. Plaintiff Susan Roe was pregnant when this action was commenced, and her physician did not believe that her health would be jeopardized if she carried the pregnancy through to term. Therefore he did not submit an attestation of medical necessity for the abortion that Ms. Roe wished to have performed. Plaintiff Roe underwent an abortion for which the State Welfare Department refused to authorize medicaid payment because no prior approval based upon the medical necessity standard had been obtained. Subsequent to the Court of Appeals remand, the District Court issued temporary restraining orders enjoining the defendants from refusing to reimburse three additional women for the costs of their elective abortions.

In *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), the Supreme Court held that encompassed within a woman's constitutional right of personal privacy is the unfettered right to terminate a pregnancy through an abortion performed by a licensed physician during the first trimester of pregnancy. Before the end of approximately twelve weeks of pregnancy, the state may not interfere in any manner with the performance of an abortion. See *Abele v. Markle*, 369 F.Supp. 807 (D.Conn.1973).

■ That a constitutional right to an abortion exists does not necessarily mean that there is a constitutional right to a *free* abortion, with the state obligated to absorb the cost of the medical procedure. Cf. *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). As the defendants point out, in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Supreme Court declined to hold that welfare assistance is a fundamental right. The present case is not controlled by the rationale or the result in *Dandridge*, however, because in *Dandridge* the state was asked to allocate additional funds solely to avoid decreasing the average AFDC grant per member of a dependent family. In *Dandridge* the state's fiscal policy had no direct effect whatsoever upon the exercise of a constitutionally protected right.

■ The Constitution does not require the state to pay for any medical services at all. Nevertheless, once a state chooses to establish a program for reimbursing the medical expenses of the indigent, and adopts as part of that program a provision that requires state funding for medical expenses arising from pregnancy, a serious equal protection issue arises if the state refuses to reimburse expenses incurred in procuring an abortion.[3]

■ When Connecticut refuses to fund elective abortions while funding therapeutic abortions and prenatal and postnatal care, it weights the choice of the pregnant mother against choosing to exercise her constitutionally protected right to an elective abortion. See *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); cf. *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Her choice is affected not simply by the absence of

---

**3.** The view that abortion and childbirth, when stripped of the sensitive moral arguments surrounding the abortion controversy, are simply two alternative medical methods of dealing with pregnancy may be gleaned from the various opinions in *Roe* and *Doe*. See *Roe v. Wade, supra*, 410 U.S. at 129–147, 148–50, and 170, 93 S.Ct. 705 (Stewart, J., concurring); *Doe v. Bolton, supra*, 410 U.S. at 218–20, 93 S.Ct. 739 (Douglas, J., concurring); *Doe v. Beal*, 523 F.2d 611, 622 (3d Cir. 1975); *Wolfe v. Schroering*, 388 F.Supp. 631, 637 (W.D.Ky.1974); but cf. *Roe v. Norton*, 522 F.2d 928, 940–941 (Mulligan, J., concurring and dissenting).

payment for the abortion, but by the availability of public funds for childbirth if she chooses not to have the abortion. When the state thus infringes upon a fundamental interest, it must assert a compelling state interest that justifies the incursion. *Dunn v. Blumstein*, 405 U.S. 330, 338–42, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972).

The state's initial position in this litigation was that it failed to reimburse elective abortions solely because it believed that federal law prohibited such payments. *Roe v. Norton, supra*, 380 F.Supp. at 728. Now the state asserts that it has a fiscal interest in refusing to fund elective abortions for welfare recipients. This interest is wholly chimerical because abortion is the least expensive medical response to a pregnancy.[4] An abortion normally requires two expenditures of funds: a consultation to determine that an abortion is medically safe, and the medical procedure itself. By contrast, in the event of childbirth, the state pays the more extensive costs of prenatal, obstetrical, and post-partum care, as well as prenatal support for the unborn child. *Klein v. Nassau County Medical Center*, 347 F.Supp. 496, 500 (E.D.N.Y.1972) (three-judge court), *remanded* in light of *Wade* and *Bolton*, 412 U.S. 925, 93 S.Ct. 2748, 37 L.Ed.2d 152 (1973). Furthermore, the birth of a child to a welfare mother increases the burden on the state's welfare coffers because the newly-born indigent child will, in all likelihood, qualify for state welfare assistance.[5] The state's assertion that it saves money when it declines to pay the cost of a welfare mother's abortion is simply contrary to undisputed facts.

■ The only other possible state interest would be that of avoiding the expenditure of public funds for a purpose the state finds morally objectionable. The Supreme Court in *Roe v. Wade*

acknowledged that abortion is a sensitive issue, but nevertheless announced the principle that a woman has a constitutional right to have an abortion, at least during the first trimester of pregnancy. The state may not justify its refusal to pay for one type of expense arising from pregnancy on the basis that it morally opposes such an expenditure of money. To sanction such a justification would be to permit discrimination against those seeking to exercise a constitutional right on the basis that the state simply does not approve of the exercise of that right. See *Doe v. Rose*, 499 F.2d 1112, 1117 (10th Cir. 1974). The state's unarticulated position on the morality of abortion cannot be considered a compelling state interest that will justify the weighting of a choice against the exercise of a constitutional right. See *United States Dept. of Agriculture v. Moreno*, 413 U.S. 528, 534–35 and n.7, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).

■ The state has advanced no interest in not paying for elective abortions that would satisfy the compelling state interest test—nor even one that would satisfy the less rigorous rational relationship test. Accordingly, that portion of § 275 which requires that an abortion be medically necessary is unconstitutional and may not be enforced by the state. *Wulff v. Singleton*, 508 F.2d 1211 (8th Cir. 1974), *cert. granted*, 422 U.S. 1041, 95 S.Ct. 2655, 45 L.Ed.2d 692, 43 U.S. L.W. 3674 (1975); *Doe v. Rose, supra; Doe v. Myatt*, No. A3–74–48 (D.N.D. Oct. 30, 1975) (three-judge court); *Doe v. Wohlgemuth*, 376 F.Supp. 173 (W.D.Pa. 1973) (three-judge court), *aff'd on other grounds sub nom. Doe v. Beal*, 523 F.2d 611, Nos. 74–1726 and 74–1727 (3d Cir. 1975).

■ The state has expressed the concern that invalidation of its policy on abortion payments will obligate it to pay

---

**4.** Abortion has been recognized as both an inexpensive and safe alternative to pregnancy in several recent decisions. *E. g., Doe v. Beal, supra* at 622; *see Roe v. Wade, supra*, 410 U.S. at 149–50 and n. 44, 93 S.Ct. 739.

**5.** *Dandridge v. Williams, supra*, is a stark example of the burdens that the state's treasury must carry, and the hard choices the state must make, when additional children are born to a family that is already receiving welfare assistance.

for all elective procedures, such as cosmetic surgery and orthodonture. The fear is groundless. In declining to pay for these procedures, the state is not discouraging the exercise of any constitutional right.

 The validity of the prior approval procedure during the first trimester of pregnancy is also before this Court.[6] The defendants, other than noting that there are other forms of medical care that require prior authorization before a medicaid claim will be honored, have asserted no interest justifying the prior authorization procedure for abortions. The state does not require prior approval for reimbursement for expenses arising out of childbirth. It has asserted no justification for requiring a different procedure when dealing with an abortion performed during the first trimester of pregnancy. Plaintiffs have submitted the affidavits of physicians who maintain that any delay in the performance of an abortion adds to the medical danger faced by the pregnant woman. The prior approval procedure creates the sort of delay that the Supreme Court found constitutionally repugnant in *Doe v. Bolton, supra.* Thus the state may not require the prior approval form to be submitted before an abortion is performed, and may not rely on the lack of such prior approval for failure to reimburse the expenses of the abortion. *Doe v.*

*Bolton, supra; Word v. Poelker,* 495 F.2d 1349, 1351–52 (8th Cir. 1974); *Wulff v. Singleton, supra,* at 1215. Similarly, § 275's requirement that evidence of the patient's consent be presented to the state prior to a first-trimester abortion furthers no legitimate state interest that justifies the distinction between abortions and other medical responses to pregnancy.[7] This provision also contravenes the Equal Protection Clause. See *Wolfe v. Schroering,* 388 F.Supp. 631, 636 (W.D.Ky.1974).

██ No state regulation of medicaid payments for abortions performed in the first trimester of pregnancy can impose conditions or requirements that are not equally applicable to medicaid payments for childbirth, if such conditions or requirements tend to discourage a woman from choosing an abortion or to delay the occurrence of an abortion that she has asked her physician to perform. Accordingly, those provisions of § 275 that require certification that an abortion is medically necessary are unconstitutional, and the defendants are hereby enjoined from enforcing them. Further, the defendants are enjoined from requiring, prior to the performance of an abortion, any form of approval as a condition for the reimbursement of the expenses of an abortion performed during the first trimester of pregnancy.

6. The procedures established by the State Welfare Department pertaining to reimbursement for an abortion performed during the second trimester of pregnancy are not before the Court. No plaintiff in this action had an abortion performed or sought permission for the performance of an abortion later than the first trimester of pregnancy. Accordingly, they have no standing to challenge the procedures established by the state with regard to the second trimester of pregnancy. *Sierra Club v. Morton,* 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

7. Whatever power the state may have to assure itself that public funds are not used for an abortion unless the woman's consent is established can be exercised by requiring, prior to actual reimbursement, presentation of evidence of consent that was obtained from the woman prior to the abortion. Requiring presentation of evidence of consent at that time does not delay the abortion nor otherwise impair any right of the woman.