**LADY JANE et al., by their next friends, individually, and on behalf of all others similarly situated**

v.

**Edward W. MAHER, Individually, and as Commissioner of Welfare for the State of Connecticut, et al.**

Civ. No. H–74–347.

United States District Court,
D. Connecticut.

Sept. 21, 1976.

Ronald Gold, Raymond R. Norko, Legal Aid Society, Hartford, Conn., Judith Mears, Yale Legal Services, New Haven, Conn., for plaintiffs.

Edmund C. Walsh, Daniel Schaefer, Barney Lapp, Asst. Attys. Gen., Hartford, Conn., for defendants.

Before ANDERSON, Circuit Judge, and BLUMENFELD and NEWMAN, District Judges.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge:

This case comes before this three-judge court on a complaint challenging the Abortion Services regulation[1] of the Connecticut State Welfare Department which requires that all minors committed to the care of the Commissioner of Children and Youth Services obtain the written consent of the Commissioner, in his capacity as legal guardian,[2] before having elective abortions.

### I.  Class Action and Mootness

▪▪▪ Plaintiffs bring this action on their own behalf and on behalf of all other

---

1.  The regulation as set forth in Manual Vol. 3, Chapter III, reads in relevant part:

"275 *Abortion Services*
An abortion may be performed on a patient only when medically necessary and after the legal consent to such procedure has been obtained.
Therapeutic abortion services within the State are covered under Title XIX when all the following conditions are met:
1.  The abortion is recommended as medically or psychiatrically necessary by the attending physician and the Chief of Obstetrics and Gynecology in accredited hospitals.
2.  The written consent for the abortion is secured from the patient or her conservator, and in the case of a minor from the parent or guardian.
In the case of a committed child, a written consent for the abortion is secured from the Welfare Commissioner, as guardian.
3.  Prior authorization for the abortion is secured from the Division of Health Services, Welfare Department."

2.  Prior to April 1, 1975, the defendant Edward W. Maher, as Welfare Commissioner, was legal guardian of all persons who are state wards. Since that time Francis H. Maloney, as Commissioner of Children and Youth Services, has acted in that capacity. Conn.Gen.Stat.Ann. § 17–62(d) (1975).

minor pregnant women whose legal guardian is the Commissioner of Children and Youth Services, who desire an abortion but who have been refused consent by the Commissioner. The requirements of Rule 23(a) and (b)(2), Fed.R.Civ.P., are met.[3] Although the complaint does not limit the class to those minors who are within the first twelve weeks of pregnancy, that was the fact in the case of each named plaintiff. Since the length of pregnancy is a significant factor, we certify the class as limited to those minor women whose pregnancy has not extended beyond the first trimester. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Despite the fact that the named plaintiffs are no longer pregnant,[4] they "nonetheless retain the right to litigate the point because it is 'capable of repetition yet evading review.' *Roe v. Wade,* 410 U.S., at 124–125, 93 S.Ct. 705." *Singleton v. Wulff,* —— U.S. ——, ——, 96 S.Ct. 2868, 2875, 49 L.Ed.2d 826 (1976). *See Sosna v. Iowa,* 419 U.S. 393, 399–403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

The plaintiffs contend that denial of consent to an abortion by the Commissioner as guardian violates certain clearly defined, constitutionally protected rights of the plaintiffs, and also, conflicts with Title XIX of the Social Security Act. We turn to their statutory claim first to consider whether it is necessary to reach the constitutional issue.[5]

## II.  *The Statutory Claim*

■ The plaintiffs contend that the Connecticut regulation requiring the Commissioner's consent to an abortion conflicts with the provisions of the Social Security laws dealing with medical assistance, 42 U.S.C. § 1396a, and with the Department of Health, Education and Welfare's regulation concerning family planning services, 45 C.F.R. § 220.21. However, as the Second Circuit noted in *Roe v. Norton,* 522 F.2d 928, 933, 935 (2d Cir. 1975), the Social Security laws do not deal with the subject of abortions and do not forbid a state welfare plan to distinguish between abortions which are voluntary from those which are medically necessary, so as to require Title XIX Medicaid for the latter, but deny them for the former. *Roe v. Norton, supra.* Sitting as a District Court, even as expanded to a panel of three judges, we are bound by the holding of our own circuit's Court of Appeals. *Nieves v. Oswald,* 477 F.2d 1109, 1112 (2d Cir. 1973); *Lewis v. Rockefeller,* 431 F.2d 368, 371 (2d Cir. 1970). We therefore must hold that the challenged regulation violates neither the Social Security Act nor the HEW regulation. Since this case cannot be disposed on the basis of the statutory claim, we must consider the constitutional claim.

## III.  *Abstention*

■ In *Bellotti v. Baird,* —— U.S. ——, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976), the Supreme Court held that a consent stat-

---

3. Rule 23(a), Fed.R.Civ.P. provides:
   "(1) [T]he class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims  .  .  .  of the representative parties are typical of the claims  .  .  .  of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
   Rule 23(b)(2), Fed.R.Civ.P., provides:
   "(2) [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

4. Each of the plaintiffs named and the several others who later intervened received requested

abortions after obtaining preliminary injunctions against the defendants' enforcement of the regulation from the district court.

5. "That the three-judge court itself not only had jurisdiction but would have been obliged to adjudicate this statutory claim in preference to deciding the original constitutional claim in this case follows from *King v. Smith,* 392 U.S. 309, [88 S.Ct. 2128, 20 L.Ed.2d 1118] (1968), where, on an appeal from a three-judge court, we decided the statutory question in order to avoid a constitutional ruling. 392 U.S., at 312 n.3, [88 S.Ct. 2128.]"
   *Rosado v. Wyman,* 397 U.S. 397, 402, 90 S.Ct. 1207, 1212, 25 L.Ed.2d 442 (1970).

ute which might be construed as only a safeguard to assure that the minor's own decision was informed could be distinguished for constitutional purposes from one which establishes a veto power in the guardian. Faced with such a statute the Court remanded the case to the district court with instructions that it abstain pending an authoritative construction of the statute by the state courts. No such situation is present here. The defendants do not attempt to support the regulation by contending that it might be construed only to insure that the minor's consent to have the abortion performed is "informed." The regulation does not lend itself to such a construction, nor have the defendants ever used the regulation for that limited purpose. They have undeviatingly withheld consent in these and in similar earlier cases solely on the ground that it was against the state's "policy" to consent, and this case does not fall within any exception. "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

### IV. *The Constitutional Issue*

■ Our decision in this case has been postponed in order to await the decision on the appeal to the Supreme Court in *Planned Parenthood v. Danforth,* 392 F.Supp. 1362 (E.D.Mo.1975), which dealt with the particular issue of whether a pregnant, unmarried minor's right to an abortion can be defeated by the refusal of her legal guardian to consent. That appeal has now been decided. —— U.S. ——, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). In holding that an unmarried minor's right to an abortion is grounded in the Constitution as firmly as that of an adult woman, and that it cannot be frustrated by her guardian's denial of consent, the Court stated:

"We agree with appellants and with the courts whose decisions have just been cited that the State may not impose a blanket provision, such as § 3(4), requiring the consent of a parent or person *in loco parentis* as a condition for abortion of an unmarried minor during the first 12 weeks of her pregnancy. Just as with the requirement of consent from the spouse, so here, the State does not have the constitutional authority to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding the consent."

At ——, 96 S.Ct. at 2843.

The arguments put forward by the defendants in this case to justify the restrictive consent requirement are mirrored images of those which were thoroughly considered and rejected in *Planned Parenthood.* It would be superfluous to repeat the Court's discussion of them here. We hold that the challenged regulation violates the first and fourteenth amendments of the Constitution and is therefore invalid.[6]

■ For the reasons set forth in Part IV of this opinion, the defendants are enjoined from requiring written consent of the Commissioner of Youth Services, as guardian, as a precondition to the performance of an abortion desired by any minor who is a ward of said Commissioner during the first trimester of her pregnancy.

SO ORDERED.

---

**6.** Although the "additional or alternative relief as may seem to the Court, to be just, proper, and equitable" for which the plaintiffs pray might be read to include a claim that the Commissioner should be ordered to pay the cost of voluntary abortions during the first trimester of pregnancy, no allegations making such a claim have been made in this case. It matters not, however, for in *Roe v. Norton,* 408 F.Supp. 660 (D.Conn.1975) (522 F.2d 928 on remand) the Connecticut Welfare Department's Commissioner was enjoined on equal protection grounds from requiring, prior to the performance of an abortion, any form of approval as a condition for the reimbursement of the expenses of an abortion performed during the first trimester of pregnancy. 408 F.Supp. at 665.